■ In the Matter of OLIVER A., Respondent, v DIANA PINA B., Appellant. [56 NYS3d 311]—

Order, Family Court, Bronx County (Llinet M. Rosado, J.), entered on or about June 15, 2016, as amended July 8, 2016, which, after a hearing, granted petitioner father's petition to direct respondent mother to return the parties' two minor children to Norway, unanimously reversed, on the law and the facts, without costs, the petition denied, and the proceeding dismissed.

Petitioner, a citizen of Norway, and respondent, a United States citizen, were married in New York in 2009, and their two children were born in Norway in 2010 and 2012. The family lived in Norway and also spent months at a time living in the maternal grandmother's apartment in New York. In 2013, after the mother was directed to leave Norway, the parties sold much of their personal property and their car, and went to the

Dominican Republic, where they stayed for several months, from September 2013 until January 2014. They then went to New York and stayed with the maternal grandmother. At some time in or about March 2014, the father returned to Norway to look for an apartment and job, with the expectation that the mother would follow with the children. In court, the parties both confirmed their understanding that the mother would return to Norway with the children when he was settled. However, the mother testified that, following a long history of domestic violence, including a choking incident in February 2014 where the police were called and issued an NYPD Domestic Incident Report, she determined not to return to Norway and told the father she would not return. In April 2015, the father filed a petition for the return of the children pursuant to the Hague Convention on the Civil Aspects of International Child Abduction (1343 UNTS 89, TIAS No. 11670 [1980]) and its domestic implementing legislation, the International Child Abduction Remedies Act (22 USC §§ 9001-9011). A parent bringing such a petition must demonstrate by a "preponderance of the evidence" that the child has been "wrongfully removed or retained" from her country of "habitual residence" (22 USC § 9003 [e] [1] [A]; *Mota v Castillo*, 692 F3d 108, 112 [2d Cir 2012]). Nevertheless, a petition will be denied if the parent opposing return of a child establishes "by clear and convincing evidence" the exception set forth in article 13b of the Convention (22 USC § 9003 [e] [2] [A])—namely, that "there is a grave risk that [the child's] return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation" (Hague Convention art 13 [b]).

The determination of a child's "habitual residence" requires inquiry into the "shared intent" of the parents "at the latest time that their intent was shared," taking into account the parents' "actions [and] declarations," as well as "whether the evidence unequivocally points to the conclusion that the child has acclimatized to the new location and thus has acquired a new habitual residence, notwithstanding any conflict with the parents' latest shared intent" (*Mota*, 692 F3d at 112, quoting *Gitter v Gitter*, 396 F3d 124, 134 [2d Cir 2005]).

Although the record supports Family Court's determination that the parties' last shared intent was to return to Norway, the court did not consider the mother's evidence that the children had been acclimatized to New York, and whether that evidence trumped the parents' shared intent (*see id.*; *see also Hofmann v Sender*, 716 F3d 282 [2d Cir 2013]).

We need not remand for this purpose, however, because we

conclude that the mother met her burden to show, by clear and convincing evidence, that the children's return to Norway would result in a grave risk of harm to them (*see* Hague Convention art 13 [b]; 22 USC § 9003 [e] [2] [A]; *Blondin v Dubois*, 189 F3d 240, 245 [2d Cir 1999]). The mother presented detailed testimony of multiple acts of domestic abuse towards her by the father, at times in the presence of the parties' children. She also presented corroborating evidence, including the testimony of the maternal grandmother, who witnessed two of the violent incidents, including the February 2014 incident, and testified to visible signs of injury to her daughter, which was also noted in the Domestic Incident Report. The mother also submitted copies of text messages sent by the father threatening the mother's life. She further showed that the father had a propensity for violent abuse, as demonstrated by his violent acts, jealous rages, and, on at least two instances, forceful treatment toward the older daughter (*see Ermini v Vittori*, 758 F3d 153, 164-165 [2d Cir 2014]; *Souratgar v Lee*, 720 F3d 96, 104 [2d Cir 2013]; *Blondin*, 189 F3d at 247). The mother presented evidence that the nature of the abuse was such that it would inevitably resume if the parties were reunited. The father acknowledged that the parties fought over the mother's infidelity, but broadly denied the mother's claims, other than admitting to pushing or grabbing the mother to restrain her. His testimony, however, was entirely uncorroborated.

The mother further presented evidence that, as a noncitizen of Norway, there would be minimal, if any, domestic violence resources available to her if she were to move there with the children, and that, due to her immigration status, she would not be allowed to live there for more than 90 days. Concur— Tom, J.P., Sweeny, Andrias and Moskowitz, JJ.